UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00076-TBR

BILLY ROSS,                                                              Plaintiff

v.

AMERICAN GENERAL LIFE INSURANCE COMPANY,                  Defendants
AMERICAN INTERNATIONAL GROUP, INC., *and*
JACKSON NATIONAL LIFE INSURANCE COMPANY

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants two motions for summary judgment. (Docket #27, 28).  Plaintiff has responded.  (Docket #29, 30).  Defendants have replied.  (Docket #31).  Accordingly, these matters now are ripe for adjudication. For the following reasons, Defendants' motions will be GRANTED in part and DENIED in part.

## BACKGROUND

This matter arises out of a life insurance policy purchased by Mayme Sue Ross in 1968 (the "Policy").  The current status of the Policy is in dispute.  The history of the Policy can be traced to 1980.  Complicating factors is a series of mergers and acquisitions through which Defendant Jackson National Life Insurance Company ("Jackson Life") arguably assumed obligation for the Policy.  The parties dispute whether, in light of the lack of recent evidence concerning the Policy, it is still valid and which insurance company remains obligated under the Policy.

Mayme Sue Ross purchased the Policy from Anchor National Life Insurance Company ("Anchor Life") on February 13, 1968.  In 1969, Anchor Life assigned the Policy to Teacher's National Life Insurance Company ("Teacher's Life").  In 1972, Teacher's Life consolidated with Western Pioneer Life Insurance Company ("Western Pioneer").  Western Pioneer sent several correspondences to Mayme Sue Ross through 1970's concerning the Policy.  On February 13, 1980, Western Pioneer sent Ross[1] a letter stating:

> "Enclosed is the necessary form for converting your Contract to a Paid Up Life Policy as you recently requested.  On the Paid to Date shown above, your total value will purchase a Paid Up Policy of $5,162.00.  Please sign the enclosed form and return it to us, at which time we will convert it to a Paid Up Policy and mail the endorsement to that effect."  (Docket #27-16).

On April 3, 1980, Western Pioneer sent a letter that stated:  "This Contract has been converted to a Paid Up Life Policy, and enclosed is an Endorsement to that effect.  Please attach this Endorsement to your Contract for safekeeping."  (Docket #27-17).  This April 3, 1980 letter is the last correspondence regarding the Policy that the parties have so far been able to discover.

In 1996, Western Pioneer merged with Reassure America Life Insurance Company ("Reassure Life").  The Policy was not listed as one of the policies received by Reassure Life.  (Docket #30-3).  Reassure Life subsequently merged with two other insurance companies, both of whom assumed the name of Reassure Life.  In 2012, Reassure Life merged with Jackson Life.

---

[1] The beneficiary of the Policy is Ross's husband, Billy Ross.  Western Life appears to have mistakenly transferred the policy under the name "Billie W. Ross."

Mayme Sue Ross passed away on March 20, 2013.  (Docket #1-2).  A few months before her death, Milner & Orr Funeral Home had sent Reassure Life a letter inquiring about the status of the Policy.  Reassure stated it could not locate the Policy and that it "must have been terminated many years ago."  (Docket #1-2).  Billy Ross, the beneficiary of the Policy, sent a complaint to the Kentucky Department of Insurance in 2013.  On March 19, 2014, Billy Ross filed this lawsuit.

Billy Ross claims that the Policy premiums were properly paid and that neither he nor his wife cashed the Policy or ever received any benefit from it.  (Docket #30-2).  Jackson Life claims that the Policy "was not listed as in-force" when Western Pioneer merged with Reassure Life and that "it would appear that the Plaintiff's decedent's policy may have been surrendered or 'cashed in' sometime prior to 1996, although Jackson has no information to that effect."  (Docket #30-1).

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of her position; she must present evidence on which the trier of fact could reasonably find for her.  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will

not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

DISCUSSION

As an initial matter, the Court will grant the motion for summary judgment filed by Defendants American General Life Insurance Company ("American General") of Delaware and American International Group, Inc. ("AIG").  The parties agree that there is no evidence that American General or AIG ever held or were obligated under the Policy. (Docket #28, 29).

In turning to Plaintiff's claims against Jackson Life, the Court will first address (I) whether Plaintiff has met his burden of showing that a Policy was in effect; and then (II) whether Plaintiff has met his burden of showing Jackson Life acted in bad faith or violated Kentucky Unfair Claims Settlement Practices Act.

I.      **The Policy.**

 "A federal court sitting in diversity must apply the substantive law, including choice of law rules, of the state in which it sits." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994).  This case is governed by Kentucky law as the insurance policy was issued to a Kentucky resident and neither party contends that another state's law should apply. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky.

4

2013) (applying the law of the state with the "most significant relationship to the transaction and the parties").

"Under Kentucky law, the party seeking to establish coverage bears the burden of establishing that the incident at issue was within the scope of the policy." *Secura Ins. Co. v. Gray Constr., Inc.*, 717 F. Supp. 2d 710, 714-715 (W.D. Ky. 2010) (*citing North American Acc. Ins. Co. v. White*, 80 S.W.2d 577, 578 (Ky. 1935). "However, the burden is on the insurer to establish that an exclusion bars coverage." *Id*. at 715 (collecting cases). "Once the insurer has shown that application of an exclusion, the burden shifts back to the insured." Id. (collecting cases). "[A]n insured will survive an insurer's motion for summary judgment where the actual policy cannot be located but the insured presents evidence establishing the issuance of a policy, the identity of the insured, the coverage period, the basic terms of coverage, and the coverage limits." *Star Oil Co. v. Aetna Cas. & Sur. Co.*, 1995 U.S. Dist. LEXIS 22258 *16-17 (E.D. Mich. 1995) (applying Michigan law).

It is undisputed that the Policy was valid and in effect as of 1980. The parties dispute how to interpret the following thirty-five year silence regarding the Policy. At this stage, the Court must "construe all inferences from that evidence in the light most favorable to the non-moving party." *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Accordingly, the Court agrees that Plaintiff has submitted evidence that the Policy was issued by a predecessor of Jackson Life and there is no evidence that Plaintiff ever recovered under the Policy or that the Policy is not otherwise valid. While Jackson Life argues that the lack of documentation regarding the Policy raises an assumption that the

Policy must have been cashed out, at this stage in the proceedings the Court cannot accept that assumption.

Similarly, Jackson Life argues that it is only liable under the Policy if Jackson Life assented to an assignment of the Policy. Jackson Life argues there is no evidence is assented to such an assignment. This argument is unpersuasive because the obligations under the Policy may pass by merger as well as by assignment. "It is generally accepted in Kentucky that a corporation which purchases another corporation does not assume the payment of any debts or liabilities of the corporation which it has purchased." *Pearson v. Nat'l Feeding Sys.*, 90 S.W.3d 46, 49 (Ky. 2002) (*citing American Railway Express Co. v. Commonwealth*, 190 Ky. 636, 228 S.W. 433, 441 (1920)). There are four exceptions to this general rule: "(1) where the purchaser expressly or impliedly agrees to assume such debts or other liabilities; (2) where the transaction amounts to a consolidation or merger of the seller and purchaser; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts." *Id.*; *Conn v. Fales Div. of Mathewson Corp.*, 835 F.2d 145, 147 (6th Cir. 1987). Jackson Life admits that it is the successor to Western Pioneer through a series of mergers, and therefore Jackson Life is liable for Western Pioneer's obligations.

Finally, this case is also distinguishable from a typical "lost policy" case because there is no doubt in this case that a valid policy did exist at some time. *Cf. Nager v. United of Omaha Life Ins. Co.*, 851 N.Y.S.2d 64 (N.Y. Sup. Ct. 2007) (finding no evidence the plaintiff ever applied for insurance). Plaintiff has established the basic terms of the Policy, the identity of the insured and the beneficiary, and the status of the

policy as of 1980.  It is only the inference regarding what happened to the Policy after 1980 that remains in dispute, and as stated above, at this stage in the proceedings that inference must be found in favor of the Plaintiff.

## II.     Bad Faith and the Unfair Claims Settlement Practices Act.

In *Wittmer v. Jones*, the Kentucky Supreme Court "gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions, whether brought by a first-party claimant or a third-party claimant, and whether premised upon common law theory or a statutory violation." *Davidson v. American Freightways*, *Inc.*, 25 S.W.3d 94, 100 (Ky. 2000).  The "three required elements of a cause of action for bad faith as follows:

> (1) The insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Id*. (*quoting Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).

"Before the cause of action for bad faith exists in the first place, there must be evidence sufficient to warrant punitive damages." (punctuation omitted)  *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. App. 2003).  "[I]n order to justify an award of punitive damages, there must be proof of bad faith sufficient for the jury to conclude that there was conduct that was outrageous, because of the defendant's evil motive, or his reckless indifference to the rights of others." *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012) (calling this "a high threshold standard").  "[T]here can be no private cause of action for a mere 'technical violation' of the UCSPA." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997).

Plaintiff has only satisfied the first prong of the above test.  Plaintiff has presented sufficient evidence to survive a motion for summary judgment that Defendant may be obligated to pay the claim under the policy.  Plaintiff's Response does not address Jackson Life's argument that it reasonably believed the Policy was previously cashed because it was not listed as a policy in effect during the 1996 merger.  Nor does Plaintiff address the third step and argue Jackson Life actually knew (or acted in reckless disregard) that it lacked a reasonable basis for denying Plaintiff's claim.  (Docket #30). In short, Plaintiff has offered no evidence or argument that Defendant acted in bad faith and accordingly Jackson Life is entitled to summary judgment on these claims.

## CONCLUSION

For the foregoing reasons, Defendants American General Life Insurance Company of Delaware and American International Group, Inc. motion for summary judgment (Docket #28) will be GRANTED.  Defendant Jackson National Life Insurance Company's motion for summary judgment (Docket #27) will be GRANTED in part and DENIED in part.  Jackson Life is granted summary judgment on Plaintiff's claims for bad faith and violation of the Kentucky Unfair Claims Settlement Practices Act.

IT IS SO ORDERED.

cc:      Counsel